**TRI–STATES DOUBLE COLA
BOTTLING CO.,**
Petitioner,

v.

**DEPARTMENT OF STATE REVENUE,**
Respondent.

No. 49T10–9406–TA–00172

Tax Court of Indiana.

Feb. 23, 1999.

Stephan L. Hodge, Thomas F. Schnellenberger, Mchale Cook & Welch, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Tri–States Double Cola Bottling Co. (Tri–States) appeals a final determination of the Department of State Revenue (Department) assessing use tax on certain items that Tri–States purchased during 1988 through 1990. The parties have narrowed the issues to be decided to three:

1) Whether employee uniforms purchased by Tri–States during the years at issue are exempt from use tax.

2) Whether glass-front coolers purchased by Tri–States during the years at issue are exempt from use tax.

3) Whether computer equipment purchased by Tri–States during the years at issue is exempt from use tax.

## BACKGROUND AND PROCEDURAL HISTORY

Located in Evansville, Tri–States is engaged in the business of selling bottled beverages. Tri–States produces its own beverages and distributes them to retail merchants who in turn sell the beverages to the general public. In 1991, the Department audited Tri–States and concluded that Tri–States had numerous tax deficiencies. Consequently, the Department issued notices of proposed assessments to Tri–States for those alleged tax deficiencies. See IND.CODE ANN. § 6–8.1–5–1(a) (West Supp.1998). Tri–States filed a timely written protest of these proposed assessments. Id. § 6–8.1–5–1(c) (West Supp. 1998). The Department held a number of hearings on Tri–States' protest and issued its final determination on April 26, 1994. Tri–

States commenced this original tax appeal on June 30, 1994, and on May 20, 1996, the parties tried this cause before the Court.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court reviews final determinations of the Department de novo and is bound by neither the evidence presented nor the issues raised at the administrative level. See IND.CODE ANN. § 6–8.1–5–1(h) (West Supp.1998); *Rotation Prods. Corp. v. Department of State Revenue*, 690 N.E.2d 795, 797 (Ind. Tax Ct.1998).

### Discussion

Indiana imposes an excise tax (gross retail or sales tax) on retail transactions in Indiana. See IND.CODE ANN. § 6–2.5–2–1 (West 1989). Indiana also imposes a complementary excise tax (use tax) on the use, storage or consumption of tangible personal property in Indiana. See *id.* § 6–2.5–3–2 (West 1989) (amended 1989); *see also USAir v. Department of State Revenue*, 623 N.E.2d 466, 468–69 (Ind. Tax Ct.1993) (discussing complementary nature of Indiana's sales and use taxes). The legislature has provided a variety of exemptions from these complementary taxes.[1] See IND. CODE ANN. §§ 6–2.5–5–1 to –38.2 (West 1989 & Supp.1998). Pursuant to its statutory authority,[2] the Department has issued regulations interpreting some of these exemption provisions.

■ In Indiana, it is well-settled that tax exemptions are to be strictly construed against the taxpayer, see *White River Envtl. Partnership v. Department of State Revenue*, 694 N.E.2d 1248, 1250 (Ind. Tax Ct.1998), and the taxpayer bears the burden of proving entitlement to the exemption. See *Indianapolis Fruit Co. v. Department of State Revenue*, 691 N.E.2d 1379, 1383 (Ind. Tax Ct.1998); *see also* IND.CODE ANN. § 6–8.1–5–1(b) (West Supp.1998) ("The burden of prov-

---

1. The sales tax exemptions found in chapter 6–2.5–5 of the Indiana Code apply to the use tax imposed by section 6–2.5–3–2. See IND.CODE ANN § 6–2.5–3–4(a)(2) (West 1989); *Hyatt Corp. v. Department of State Revenue*, 695 N.E.2d 1051, 1053 n. 3 (Ind. Tax Ct.1998), *review denied*.

2. *See* IND.CODE ANN. § 6–8.1–3–3(a) (West Supp. 1998).

ing that the proposed assessment is wrong rests with the person against whom the assessment is made."). However, the Court must avoid reading an exemption provision so narrowly so as to exclude cases rightly falling within the ambit of that exemption provision. *See Rotation Prods. Corp.*, 690 N.E.2d at 798 (citing *Harlan Sprague Dawley, Inc. v. Department of State Revenue*, 605 N.E.2d 1222, 1225 (Ind. Tax Ct.1992)).

## I. The Uniforms

During the years at issue, Tri–States purchased uniforms for its employees. Tri–States contends that some of these uniforms are exempt from use tax under IND. ADMIN. CODE tit. 45, r. 2.2–5–8(c)(2)(F) (1996), which exempts "[s]afety clothing ... [that] is required to ... prevent contamination of the product during production" from sales and use tax.[3] Tri–States maintains that uniforms worn by its production employees (i.e., employees engaged in the manufacture of the beverages) are required to prevent contamination of the beverages.

■ Tri–States is required to maintain a sanitary environment in its production facility because Tri–States produces items for human consumption. To ensure compliance with this requirement, Tri–States' production facility is regularly inspected by various federal and state regulatory authorities. Although the regulatory authorities do not specifically require that the production employees wear uniforms, Tri–States requires its production employees to do so. Tri–States provides the production employees with six sets of uniforms. The production employees are required to change their uniforms daily. However, they are allowed to wear the uniforms to and from work as well as during breaks.

■ The Department, citing *General Motors Corp. v. Department of State Revenue*, 578 N.E.2d 399, 401 (Ind. Tax Ct.1991), *aff'd*, 599 N.E.2d 588 (Ind.1992), argues that the Court must make a finding that the uniforms are essential and integral to the production process in order for Tri–States to gain the exemption. This is contrary to the regulation. Although it is well-settled that items must be essential and integral to a production process in order to be exempt from sales and use taxes, *see Department of State Revenue v. Cave Stone, Inc.*, 457 N.E.2d 520, 524 (Ind.1983), the Department has adopted regulations that deem certain items to meet that essential and integral standard. One such item is clothing that is required to prevent contamination of a product. *See* IND. ADMIN. CODE tit. 45, r. 2.2–5–8(c)(2)(F); *Indianapolis Fruit Co.*, 691 N.E.2d at 1386. This means that the Court need only examine whether the uniforms in this case are required to prevent contamination of Tri–States' product.

It is undisputed that Tri–States is required to maintain a sanitary environment in its production facility in order to prevent contamination of its products. One possible source of contamination is through the production employees, who, despite the fact that Tri–States' bottling process is largely automated, have some physical contact with the beverages as they are being produced. (Trial Tr. at 27). Tri–States has chosen to guard against this possible source of contamination by requiring its production employees to wear clean uniforms and change them every day. This, however, does not meet the requirements of the regulation.

Undoubtedly, Tri–States' policy of requiring its production employees to wear clean uniforms contributes to the overall cleanliness of its production facility. However, the fact that the uniforms reduce the possibility of contamination to some unspecified degree does not prove that they are required to prevent contamination. In addition, if the wearing of the uniforms were truly required to prevent contamination, it is highly unlikely that Tri–States would permit those uniforms to be worn outside its production facility where they can be exposed any number of contaminants. *See* IND. ADMIN. CODE tit. 45, r. 2.2–5–8(c)(4)(B). Therefore, the Court finds that Tri–States has not met its burden of establishing entitlement to the exemption.

---

**3.** On its face, IND. ADMIN. CODE tit. 45, r. 2.2–5–8 (1996) only applies to the sales tax. However, because sales tax exemptions apply to the use tax, this regulation applies to the use tax as well.

## II.  The Glass–Front Coolers

During the years at issue, Tri–States purchased glass-front coolers that it provides free of charge to retailers who sell Tri–States' products.  Tri–States enters into written agreements with the retailers concerning the coolers.  Tri–States maintains that these coolers are leased to the retailers, thereby making them exempt from the use tax under IND.CODE ANN. § 6–2.5–5–8 (West 1989) (amended 1990) [4], which exempts goods acquired for resale, rental, or leasing, from sales and use tax.[5]  The Department contends that the agreements between Tri–States and the retailers do not constitute leases and that therefore section 6–2.5–5–8 does not apply.

■ With respect to leases of tangible personal property, section 6–2.5–5–8 and subsection 6–2.5–4–10(a) work together. Subsection 6–2.5–4–10(a) imposes a tax on the leasing of tangible personal property. Section 6–2.5–5–8 exempts, inter alia, tangible personal property acquired for the purpose of leasing that property to others.  This means that either Tri–States' purchase of coolers [6] is taxable or each transaction between Tri–States and the retailers is taxable. They cannot both be subject to taxation nor can they both escape taxation because taxation of one depends on the lack of taxation of the other.

■ Therefore, in resolving this dispute, the Court must look to the meaning of lease as it is used in section 6–2.5–5–8 and as it is used in subsection 6–2.5–4–10(a).  Neither section 6–2.2–5–8, subsection 6–2.5–4–10(a), nor Department regulations provide a definition of lease.[7]  It is therefore proper for the Court to refer to other areas of the law to determine the meaning of lease.  *See Monarch Beverage Co. v. Department of State Revenue*, 589 N.E.2d 1209, 1212 (Ind. Tax Ct.1992) (court may look to the "law of sales for assistance in interpreting tax laws that relate to the sale of goods").  IND.CODE ANN. § 26–1–2.1–103(1)(j) [8] (West 1995) defines a lease as "a transfer of the right to possession and use of goods for a term in return for consideration...." [9]

■ The transactions between Tri–States and the retailers do arguably fall within the outer limits of subsection 26–1–2.1–103(1)(j).

**4.**  The amendment to section 6–2.5–5–8 has no bearing on the outcome of this case.

**5.**  Many sales and use tax exemptions were enacted with the purpose of mitigating the effect of tax pyramiding.  *See Hyatt Corp.*, 695 N.E.2d at 1056; *see also Harlan Sprague Dawley, Inc.*, 605 N.E.2d at 1228.  Section 6–2.5–5–8 is one of these provisions.  *See id.*  Because the lease of tangible personal property is subject to sales tax, *see* IND.CODE ANN. § 6–2.5–4–10(a) (West 1989), were it not for section 6–2.5–5–8, part of the sales tax on the lease transaction would reflect the tax on the lessor's purchase of the property being leased, thus resulting in tax pyramiding.

**6.**  Or, because the sales tax was not paid on the purchase, Tri–States' use of the coolers was taxable.

**7.**  IND. ADMIN. CODE tit. 45, r. 1–1–29 (1996) provides guidance on distinguishing a lease from a sale in the gross income tax context.  However, that regulation does not provide a definition of lease.

**8.**  Subsection 26–1–2.1–103(1)(j) along with the rest of Article 2A of the UCC was adopted in 1991.  *See generally* Harold Greenberg, *Indiana Adds Articles 2A and 4A of the Uniform Commercial Code*, 25 IND. L.REV. 1029 (1992).  The rele-

vant tax years at issue in this case were prior to 1991.  However, although subsection 26–1–2.1–103(1)(j) is not controlling, it may be used by the Court to help determine the meaning of lease in this case.

**9.**  When applying this definition of lease to subsection 6–2.5–4–10(a) and section 6–2.5–5–8, the Court must also keep in mind that it is construing a tax imposition provision (subsection 6–2.5–4–10(a)) and a tax exemption provision (section 6–2.5–5–8).  Tax imposition provisions are to be strictly construed against the state, *see State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind.1990); *Department of State Revenue v. Klink*, 232 Ind. 473, 112 N.E.2d 581, 582 (1953); *Wechter v. Department of State Revenue*, 544 N.E.2d 221, 224 (Ind. Tax Ct.1989), *aff'd*, 553 N.E.2d 844 (Ind.1990), and tax exemption provisions are to be construed in favor of taxation.  *See Department of State Revenue v. Hardware Wholesalers, Inc.*, 622 N.E.2d 930, 933–34 (Ind.1993); *Sony Music Entertainment v. State Bd. of Tax Comm'rs*, 681 N.E.2d 800, 801 (Ind. Tax Ct.1997), *review denied.*  These principles, when applied to the two statutory provisions at issue in this case, create a bias toward a finding that the transactions between Tri–States and the retailers were not taxable and the concomitant finding that Tri–States' purchase of the coolers was taxable.

The transactions involve a transfer of a right to possession of goods for consideration.[10] The only question is whether the fact that there are no time periods specified in the agreements means that the agreements do not satisfy the "for a term" requirement of subsection 26–1–2.1–103(1)(j). However, the Court need not delineate the outer contours of subsection 26–1–2.1–103(1)(j) in order to determine whether the transactions at issue constituted leases as the term is used in subsection 6–2.5–4–10(a) and section 6–2.5–5–8.

Although the transactions at issue may fall under an expansive definition of lease, the ordinary understanding of lease would not encompass this transaction. In everyday understanding, leases have payment terms, and although the payment need not be in legal tender, see Hertz Corp., 457 N.E.2d at 249, there still must be some form of payment. Cf. Hardware Wholesalers, Inc., 622 N.E.2d at 934 (discussing ordinary understanding of bank deposits). In this case, the retailers are not paying for the use of the coolers. The use of the coolers by the retailers is free of charge. The Court therefore holds that the transactions between Tri–States and the retailers are not taxable under subsection 6–2.5–4–10(a)[11] and that, as a result, the coolers were not exempt from use tax under section 6–2.5–5–8.

The Court notes that this holding makes the administration of the sales and use tax laws simpler. See Knox County Rural Elec. Mem. Corp. v. PSI Energy, Inc., 663 N.E.2d 182, 192 (Ind.Ct.App.1996) (court should construe statute so as to favor public convenience), trans. denied. If the transactions between Tri–States and the retailers were subject to sales tax under subsection 6–2.5–4–10(a), the computation of the amount of consideration received by Tri–States would be difficult, if not impossible, whereas the computation of the sales tax on the purchase of the coolers involves only the determining of the sale price of the coolers. The same is likely true for similar transactions.[12]

### III. The Computer Equipment

■ During the tax years at issue, Tri–States purchased computer equipment from a retailer in Kentucky. Tri–States maintains that Indiana use tax[13] was collected by the retailer and that therefore Tri–States has discharged its obligation to pay use tax on the computer equipment.[14] See IND.CODE ANN. § 6–2.5–3–4(a)(1) (West 1989) (tangible personal property exempt from use tax if sales tax paid on acquisition of the property). The Department maintains that because the use tax was never remitted to the Department and the seller was not registered as an agent of the Department, see id. § 6–2.5–8–1 (West 1989) (amended 1997), Tri–States is liable for the use tax imposed by section 6–2.5–3–2.

The parties do not dispute the applicability of the use tax in this case. Rather, the issue is whether Tri–States is liable for it. IND. CODE ANN. § 6–2.5–3–6(b) (West 1989) (amended 1989,[15] 1994 & 1997) provides:

**10.** Consideration does not have to be in the form of money. See Monarch Beverage Co., 589 N.E.2d at 1212; IND. ADMIN. CODE tit. 45, r. 2.2–4–1(b) (1996); see also Department of State Revenue v. Hertz Corp., 457 N.E.2d 246, 249 (Ind.Ct.App. 1983). Therefore, the retailers' promise to only place Tri–States' products in the coolers could constitute consideration.

**11.** Tri–States contends that it remitted sales tax on the "consideration received from such lease agreements. That consideration was in the form of increased revenues from the sale of its products...." (Post–Tr. Br. at 4). This contention is wholly unmeritorious. The payment of taxes on the increased sales of Tri–States' products has nothing to do with whether the sales tax, if any, triggered by the transactions between Tri–States and the retailers was remitted. The Court notes that no sales tax was paid on these transactions because there was no lease income. (Trial Tr. at 25).

**12.** The Court also notes that the best solution to the issues raised by this case is for the Department to issue regulations governing these types of situations. This would give taxpayers and the courts better guidance in this area.

**13.** If Tri–States had purchased the equipment in Indiana, then that transaction would have incurred sales tax. See IND.CODE ANN. § 6–2.5–2–1.

**14.** Tri–States does not argue that it is entitled to a credit for sales taxes paid to another state. See IND.CODE ANN. § 6–2.5–3–5(a) (West 1989).

**15.** The amendment to section 6–2.5–3–6 has no bearing on the outcome of this case.

The person liable for the use tax shall pay the tax to the retail merchant from whom he acquired the property, and the retail merchant shall collect that tax as an agent for the state, if the retail merchant is engaged in business in Indiana or if the retail merchant has departmental permission to collect the tax. *In all other cases, the person shall pay the use tax to the Department.*

(emphasis added). Under subsection 6–2.5–3–6(b), Tri–States is liable for the use tax unless it can show that the seller in this case was either a retail merchant engaged in business in Indiana or that the seller in this case had permission from the Department to collect the tax. Tri–States has done neither. There is insufficient evidence in the record to support a conclusion that the seller in this case was engaged in business in Indiana,[16] and the only evidence in the record concerning whether the seller had departmental permission to collect the tax tends to show that the seller did not have such permission. (Trial Tr. at 43). Consequently, Tri–States is liable for the use tax.

This may seem a harsh result because there is evidence in the record tending to suggest that, at the very least, Tri–States believed that it actually paid the use tax to the seller. (Trial Tr. at 12–14). However, subsection 6–2.5–3–6(b) clearly states when the taxpayer is supposed to pay the retailer and when the taxpayer is supposed to pay the Department. In addition, the Court notes that taxpayers in Tri–States' position are not without a remedy: they can recover from the seller if the seller fails to remit use tax on their behalf.

## CONCLUSION

For the aforementioned reasons, the Court now finds for the Department on all the issues raised in this case.

16. At trial, Tri–States presented the testimony of Michael Lee Smith, president of Tri–States' parent company, Creative Beverage Co. Mr. Smith testified that the seller in this case was the "distributor of the Indiana office of Unisys." (Trial Tr. at 14). Although "engaged in business in Indiana" has a broad meaning, *see* IND. ADMIN. CODE tit. 45, r. 2.2–3–19 (1996), this does not establish that the seller was engaged in business in Indiana.