**TRUMP INDIANA, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0201–TA–5.

Tax Court of Indiana.

June 16, 2003.

Jeffrey S. Dible, Michael T. Bindner, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Linda I. Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Trump Indiana, Inc. (Trump) appeals from the Indiana Department of State Revenue's (Department) proposed assessment for use tax (including penalties and interest) in the amount of approximately $1.8 million for 1996 and 1997 (the years at issue). The case is before the Court on the parties' cross-motions for summary judgment, which raise the following issues:

I.    Whether Trump is entitled to the public transportation exemption for its purchase of personal property for its riverboat;

II.    Whether Trump is entitled to the equipment exemption for its purchase of a hotdog bun warmer and a microwave oven;

III.    Whether Trump is entitled to a refund of use tax it paid on the 1996 purchase of its riverboat; and

IV.    Whether Trump is subject the 10% negligence penalty imposed on its use tax deficiency.

For the reasons stated below, the Court DENIES summary judgment to Trump on Issues I and II and GRANTS summary judgment to Trump on Issue III. Finally, as to Issue IV, the Court GRANTS in part

and DENIES in part summary judgment to Trump.[1]

## FACTS AND PROCEDURAL HISTORY

Trump is a Delaware corporation with its principle place of business in Gary, Indiana. In 1996, Trump contracted with a Florida business to construct a riverboat for $26.2 million. Trump paid neither Indiana nor Florida sales tax on the riverboat. In June 1996, the riverboat was delivered to Buffington Harbor (on Lake Michigan), Indiana. At that time, Trump became licensed to operate the riverboat pursuant to Indiana Code Section 4–33 *et seq.*

In 1999, the Department audited Trump for the years at issue, which resulted in a proposed sales and use tax assessment, including penalties and interest, of $2,337,822.59. Trump protested the proposed assessment, which the Department sustained in part and denied in part. Ultimately, the Department assessed Trump approximately $1.8 million in use tax, including penalties and interest.[2]

Trump initiated an original tax appeal on January 8, 2002 and paid the proposed assessment under protest. On November 7, 2002, Trump filed a motion for summary judgment. On February 5, 2003, the De-partment filed a cross-motion for summary judgment. The Court held a hearing on both motions on March 31, 2003. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

This Court hears appeals from denials of protests by the Department *de novo* and therefore is not bound by the evidence or the issues raised at the administrative level. IND.CODE § 6–8.1–5–1 (Supp.2002); *Snyder v. Indiana Dep't of State Revenue,* 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *rev. denied,* 735 N.E.2d 233 (Ind.2000). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Snyder,* 723 N.E.2d at 488.

### Discussion

### I. Transportation exemption

■ The first issue is whether Trump is exempt from use tax[3] paid on its purchase of personal property for its riverboat for the years at issue. Trump argues that because it transported people by water in exchange for consideration, it qualifies for

---

1. The Department's motion for summary judgment in this case substantially mirrors its motion for summary judgment in *Grand Victoria Casino and Resort, LP v. Indiana Dep't of State Revenue,* 789 N.E.2d 1041 (Ind. Tax Ct.2003), which was handed down concurrently with this decision. Because of the Court's holding in *Grand Victoria,* it need not address the arguments that the Department raises in support of its motion for summary judgment here. *See id.,* at 1045–1049.

2. Of this proposed assessment, approximately $1.3 million in use tax was imposed on the purchase of the riverboat.

3. Indiana imposes sales tax "on retail transactions made in Indiana." IND.CODE § 6–2.5–2–1(a) (1998); *see also* IND.CODE §§ 6–2.5–1–2 (1998) (defining "retail transaction" as "a transaction of a retail merchant"); 6–2.5–4–1(b) (1998) (providing that a retail merchant sells at retail when he acquires and resells tangible personal property). Under Article 2.5 of the tax code, Indiana also imposes a use tax—which is the functional equivalent of sales tax—on the acquisition of certain non-exempt tangible personal property that escapes sales tax, usually because the property was acquired in a transaction that occurred outside of Indiana. *See Rhoade v. Indiana Dep't of State Revenue,* 774 N.E.2d 1044, 1047–48 (Ind. Tax Ct.2002).

the public transportation exemption,[4] which provides, "Transactions involving tangible personal property and services are exempt from [sales] tax, if the person acquiring the property or service directly uses or consumes it in providing public transportation for persons or property." IND.CODE § 6–2.5–5–27 (1998).

As this Court has previously stated, "it is well-settled that tax exemptions are to be strictly construed against the taxpayer, and the taxpayer bears the burden of proving entitlement to the exemption." *Tri–States Double Cola Bottling Co. v. Dep't of State Revenue*, 706 N.E.2d 282, 283 (Ind. Tax Ct.1999) (citation omitted). "However, the Court must avoid reading an exemption provision so narrowly so as to exclude cases rightly falling within the ambit of that exemption provision." *Id.* at 284. For purposes of the exemption, the Department has defined "public transportation" as "the movement, transportation, or carrying of persons and/or property *for consideration* by a common carrier, contract carrier, household goods carrier, carriers of exempt commodities, and other specialized carriers performing public transportation service for compensation by . . . water[.]" IND. ADMIN. CODE tit. 45, r. 2.2–5–61(b) (2001) (emphasis added). *See also Meyer Waste Sys., Inc. v. Indiana Dep't of State Revenue*, 741 N.E.2d 1, 9 (Ind. Tax Ct.2000) (holding that to qualify for the exemption, the movement, transportation, or carrying must be for consideration), *review denied.*

Trump's riverboat typically left its dock for roundtrip journeys on Lake Michigan that lasted up to four hours. However, assuming that Trump charged admission to its riverboat,[5] the law *required* Trump to leave dock before gaming could begin. *See* IND.CODE § 4–33–9–2 (1998) (providing that "gambling may not be conducted while a riverboat is docked") (amended by Pub.L. 192–2002 § 16(ss)). A promise by a party to perform an act that the law already requires the party to perform is not consideration. *Grand Victoria Casino and Resort, LP v. Indiana Dep't of State Revenue*, 789 N.E.2d 1041, 1044 (Ind. Tax Ct.2003) (quoting *Ritenour v. Mathews*, 42 Ind. 7, 14 (1873)). Hence, because the law required Trump to leave dock before gambling could ensue, its movement of passengers was not bargained-for consideration. *See Grand Victoria*, 789 N.E.2d at 1044–1045. Consequently, Trump is not entitled to the exemption. The Court therefore DENIES summary judgment to Trump on this issue and GRANTS it in favor of the Department.

## II. Equipment exemption

■ The second issue is whether Trump is entitled to the equipment exemption under Indiana Code Section 6–2.5–5–3(b), which provides that "[t]ransactions involving manufacturing machinery, tools, and equipment are exempt from [sales] tax if the person acquiring that property acquires it for direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property."[6] IND.CODE

---

4. Trump also claims the use tax it was assessed on the purchase of its riverboat falls under the public transportation exemption. However, given the Court's holding in Section III, *infra*, it need not reach this issue.

5. Although it charged no admission *per se* to board its riverboat, Trump argues that the gaming tokens its customers purchased satis-

fied the requirement that transportation be for consideration. (Pet'r Mem. of L. in Supp. of Mot. for Summ. J. at 17.)

6. The equipment exemption is an exemption from sales tax; exemptions from sales tax are made applicable to the use tax by Indiana Code Section 6–2.5–3–4(a)(2). IND.CODE § 6–2.5–3–4(a)(2).

§ 6–2.5–5–3(b) (1998). Trump contends that a hotdog bun warmer and a microwave oven that it purchased for the riverboat's kitchen qualify for the exemption. Trump is incorrect.

To qualify for the equipment exemption, a taxpayer must show that it is engaged in the direct production or manufacture of other tangible personal property. *See Gen. Motors Corp. v. Indiana Dep't of State Revenue*, 578 N.E.2d 399, 401 (Ind. Tax Ct.1991), *aff'd*, 599 N.E.2d 588 (1992). If the taxpayer satisfies this element, it must then show that the equipment for which it seeks an exemption is directly used in the production of the tangible personal property. *See id.* "There are innumerable ways to produce other tangible personal property, and the exemption provision[ ] cannot be expected to give a precise answer to each factual situation that arises." *Rotation Prod. Corp. v. Dep't of State Revenue*, 690 N.E.2d 795, 798 (Ind. Tax Ct.1998). Nevertheless, the Department's rules make clear that production must entail a "substantial" change or transformation that "places tangible personal property in a form, composition, or character different from that in which it was acquired." IND. ADMIN. CODE tit. 45, r. 2.2–5–8(k) (2001). Moreover, production must increase the number of "scarce economic goods," i.e., it must create a new, marketable product. *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue*, 605 N.E.2d 1222, 1226 (Ind. Tax Ct.1992) (quoting *Borden Co. v. Borella*, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945)).

With respect to food items, this Court has held that a taxpayer is entitled to the equipment exemption when its equipment is directly used to induce a substantial chemical change in the food, thereby transforming the food into a new, marketable product. *See Indianapolis Fruit Co. v. Dep't of State Revenue*, 691 N.E.2d 1379, 1383–84 (Ind. Tax Ct.1998). Here, the Department granted the exemption to Trump for items directly used by Trump to alter the chemical composition of food items, either by cooking food or by freezing water. (*See* Pet'r Mem. of L. in Supp. of Mot. for Summ. J. at 25 (citing Dep't Letter of Finding).) However, the Department found—and Trump does not deny—that Trump used the bun warmer and microwave simply to keep food warm; the Department concluded that to merely warm food is not to directly produce food. (*See* Pet'r Mem. of L. in Supp. of Mot. for Summ. J. at 25 (citing Dep't Letter of Finding).) Trump, on the other hand, has made no argument nor cited any authority showing that to merely warm food induces a substantial chemical transformation in the food that results in a new, marketable product. *See* 45 IAC 2.2–5–8(k) (requiring a "substantial change" in the product); *Indianapolis Fruit*, 691 N.E.2d at 1383–84; *Harlan Sprague Dawley*, 605 N.E.2d at 1225. Accordingly, Trump is not entitled to judgment as a matter of law on this issue. The Court therefore DENIES summary judgment to Trump and instead GRANTS summary judgment to the Department.

### III.  Purchase of the riverboat

█ The third issue is whether Trump is entitled to a refund of use tax it paid on the 1996 purchase of its riverboat. Trump argues that the riverboat was not subject to use tax because it is classified by statute as "real property" and, therefore, was not subject to use tax during the years at issue. Trump is correct.

Article 2.5 of the tax code (the sales and use tax statutes) deals primarily with transactions involving personal property. However, the Legislature has classified riverboats as real property when they are licensed pursuant to Indiana Code Section 6–1.1–1–15(5). *Grand Victoria*, 789 N.E.2d at 1047 (citing IND.CODE § 6–1.1–1–

15(5) (1998)). By doing so, the Legislature necessarily excluded such riverboats from the provisions of Article 2.5. *Grand Victoria*, 789 N.E.2d at 1047. The undisputed facts show that Trump's riverboat was licensed pursuant to Indiana Code Section 4–33 *et seq.* during the years at issue. Consequently, use tax did not apply to it. Accordingly, Trump is entitled to a refund of the use tax assessed for the purchase of its riverboat. The Court GRANTS summary judgment to Trump on this issue.[7]

## IV.  Ten percent penalty

The final issue is whether Trump should be subject to the 10% negligence penalty imposed on its use tax deficiency assessment. Trump argues that it should not be subject to the penalty because it acted reasonably in withholding the tax payments at issue. The Department, on the other hand, argues that the penalty is warranted because Trump failed to pay sales or use tax on items clearly subject to those taxes.

Indiana Code Section 6–8.1–10–2.1 subjects a person to a penalty if the person "incurs, upon examination by the department, a deficiency that is due to negligence[.]" IND.CODE § 6–8.1–10–2.1(a)(3) (1998). The penalty is 10% of "the amount of deficiency as finally determined by the department." IND.CODE § 6–8.1–10–2.1(b)(4). "If a person subject to the penalty ... can show that the failure to file a return, pay the full amount of tax shown on the person's return, timely remit tax held in trust, or pay the deficiency determined by the department was due to reasonable cause and not due to willful neglect, the department shall waive the penalty." IND.CODE § 6–8.1–10–2.1(d). Thus, a taxpayer may escape the penalty by affirmatively establishing "that the failure to file a return, pay the full amount of tax due, timely remit tax held in trust, or pay a deficiency was due to reasonable cause and not due to negligence." IND. ADMIN. CODE tit. 45, r. 15–11–2(c) (2001). "In order to establish reasonable cause, the taxpayer must demonstrate that it exercised ordinary business care and prudence in carrying out or failing to carry out a duty giving rise to the penalty imposed[.]"[8] *Id.*

■ In the instant case, Trump's claim to the transportation exemption ignores a fundamental tenant of contract law. *See opinion, supra*, at § I. As to the equipment exemption, there is sufficient regulatory and case law to indicate that equipment used merely to warm food is not exempt from sales or use tax. *See id., supra* at § II. Thus, Trump did not have reasonable cause to withhold tax on these items. Accordingly, the Court DENIES Trump's motion for summary judgment as

---

7. The Department argues, in the alternative, that Trump owes use tax on its riverboat because under Article 2.5, the riverboat is a watercraft required to be registered for use in Indiana. In light of the Court's holding, it need not address the Department's argument. *See also Grand Victoria*, 789 N.E.2d at 1046–1049.

8. Factors which may be considered in determining reasonable cause include, but are not limited to:
   (1) the nature of the tax involved;
   (2) judicial precedents set by Indiana courts;
   (3) judicial precedents established in jurisdictions outside Indiana;
   (4) published department instructions, information bulletins, letters of findings, rulings, letters of advice, etc.;
   (5) previous audits or letters of findings concerning the issue and taxpayer involved in the penalty assessment.
   Reasonable cause is a fact sensitive question and thus will be dealt with according to the particular facts and circumstances of each case.
   IND. ADMIN. CODE tit. 45, r. 15–11–2(c) (2001).

to the use tax it withheld under the equipment and transportation exemptions.

█ As to Trump's riverboat, however, since it fell within the statutory definition of "real property," it was not subject to use tax and so no penalty can be due. *See opinion, supra* at § III. The Court therefore GRANTS summary judgment to Trump on the use tax withheld on the purchase of its riverboat.

### Conclusion

For the aforementioned reasons, the Court DENIES Trump's motion for summary judgment as to Issues I and II. The Court GRANTS Trump's motion for summary judgment as to Issue III. As to Issue IV, the Court GRANTS in part and DENIES in part Trump's motion for summary judgment. The Court REMANDS this case to the Department to determine, consistent with this opinion, the amount of refund owed to Trump.